| | |
|---|---|
| BETTY JO DAILEY,            ]<br>    Plaintiff,              ]<br>                              ]<br>v.                            ]<br>                              ]<br>MICHAEL J. ASTRUE, COMMISSIONER ]<br>OF SOCIAL SECURITY,           ]<br>    Defendant.             ] | No. 2:06-0099<br>Judge Nixon/Knowles |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "agency"), through its Commissioner, denying the plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles II and XVI of the Social Security Act.

The case is currently pending on plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 15. Defendant has filed a Response in opposition to the plaintiff's Motion. Docket Entry No. 19.

For the reasons set forth below, the undersigned respectfully recommends that the plaintiff's Motion for Judgment on the Administrative Record be denied and that the decision of the SSA be affirmed.

1

## I. Background

Plaintiff ("claimant"), proceeding through counsel, is a resident of Hilham, Tennessee. She is a high school graduate who was employed as a licenced practical nurse (Tr. 194). In May, 1998, the plaintiff was involved in an automobile accident (Tr. 349). Shortly thereafter, she began to experience pain in her neck and upper torso (Tr. 316-17). Plaintiff's primary care provider, Dr. Larry Mason, referred the plaintiff to a neurosurgeon, Dr. Joseph Jestus, who diagnosed the plaintiff as having a whiplash injury (Tr. 337). Her treatment was conservative and included physical therapy (Tr. 341-43), anti-inflammatory drugs, and medication for pain (Tr. 336-37).

The plaintiff was later referred to a second neurosurgeon, Dr. William Schooley, who found nothing of note that would cause her continued discomfort (Tr. 522-29). She then began pain management under Dr. William Leone, who prescribed a series of cervical epidural steroid injections (Tr. 506-513). Apparently, this course of treatment was not entirely successful and the plaintiff returned to Dr. Jestus.

Dr. Jestus examined the plaintiff and concluded that her pain was the result of degeneration or arthritis in her spine (Tr. 332). He recommended a series of lumbar epidural steroid injections as a course of treatment. *Id.* Dr. Leone administered the injections, but the injections made the plaintiff's pain seem worse (Tr. 475).

In March, 2002, Dr. Kenneth Beaty became the plaintiff's primary care provider (Tr. 275). Pursuant to his referral, the plaintiff was diagnosed with mild obstructive sleep apnea (Tr. 399). When the plaintiff began to experience panic attacks, depression, trouble sleeping, and short term memory loss, she sought mental health care from LifeCare Family Services (Tr. 177-78). Dr. Cynthia Rector, a psychiatrist, directed the plaintiff's mental health care which included medication

and home visits (Tr. 155-178). Eight months after beginning her mental health treatment, the plaintiff was discharged from the LifeCare program for non-compliance with case management (Tr. 180).

From June 2004 - January 2005, Dr. Beaty treated the plaintiff for various maladies such as rheumatoid arthritis, degenerative disc disease, and skin lesions (Tr. 231-239). Dr. Jerry Lee Surber examined the plaintiff as part of an evaluation to determine whether the plaintiff's physical limitations would qualify her as disabled and concluded that,

> (1) she would frequently be able to lift at least ten pounds during 1/3 to 2/3 of an 8 hour work day,
>
> (2) she could walk or stand with normal breaks for at least 1/2 of an 8 hour work day, and
>
> (3) she could sit with normal breaks for up to 6 hours of an 8 hour work day (Tr. 181-86).

Eugene Smith, a psychologist, also examined the plaintiff to ascertain whether her psychological problems qualified her as disabled and eligible for DIB and SSI (Tr. 193-198). He observed that the plaintiff's immediate, recent and remote memories were intact (Tr. 196). Mr. Smith further noted that she had no thought process disorders and was oriented to time, place, person, and circumstance (Tr. 196). Mr. Smith diagnosed the plaintiff as having a major depressive disorder without psychotic symptoms (Tr. 197). He found that this "would affect her ability to interact in an emotionally stable fashion with supervisor, peer or public a lot", and that "she would not be able to sustain her focus or concentration due to her low frustration tolerance and due to her depression." (Tr. 197). Mr. Smith further found that the plaintiff "would not be expected to show up on time for

3

the job or remain on the job because of her depression and anxiety about work." (Tr. 197).[1]

In January, 2005, Dr. Sivalingam Kanagsegar, a rheumatologist, examined the plaintiff and found that she exhibited generalized skin lesions with a degenerative joint disease of the back (Tr. 220). He also opined that she may be suffering from chronic fibromyalgia syndrome (Tr. 220). The plaintiff's mental condition began to worsen and she sought help from the Plateau Mental Health Center (Tr. 446-456). There she was diagnosed with a mood disorder and depression arising from her medical condition (Tr. 455).

## II. Administrative Proceedings

On April 8, 2004, the plaintiff protectively filed an application for SSI benefits (Tr. 19). Within a few weeks, she filed a DIB application as well (Tr. 19).[2] Plaintiff's applications were denied initially (Tr. 38-39) and upon reconsideration (Tr. 40-41; 61-62).

The plaintiff then filed a timely request for an administrative hearing (Tr. 36). The hearing was held on January 9, 2006 before Administrative Law Judge ("ALJ") George L. Evans (Tr. 547). The plaintiff was represented by counsel and she, her mother, Helen Dailey, and J.D. Flynn, an independent vocational expert, appeared and testified (Tr. 547-599). At the conclusion of the hearing, the ALJ took the matter under advisement (Tr. 598). On March 16, 2006, he announced his findings of fact and conclusions of law (Tr. 19-29).

The ALJ found that : (1) the claimant had met the insured status requirement of the Social

---

[1] Ironically, Mr. Smith did note that the plaintiff arrived on time for her appointment (Tr. 193).

[2] According to the ALJ, the plaintiff had earlier filed applications for DIB and SSI which were denied at the initial level and later on reconsideration because the plaintiff was then deemed not to be disabled. This determination was affirmed by another ALJ and upheld by the Appeals Council (Tr. 19).

4

Security Act through June 30, 2006 (Tr. 21); (2) the claimant had not engaged in substantial gainful employment at any time relevant to his decision (Tr. 21-22); (3) the claimant suffers from severe impairments which include the effects of a cervical whiplash injury, a small disc herniation at the C6-7 level of the spine, status post-temporomandibular joint syndrome with arthroscopy, very minimal degenerative disc disease in the lumbar spine, mild obstructive sleep apnea, and depression (Tr. 22-25); (4) the claimant's impairments do not meet or medically equal the impairments listed in agency regulations (Tr. 25); (5) considering the claimant's residual functional capacity, the claimant was unable to perform any past relevant work (Tr. 27); and (6) there are jobs that exist in sufficient number in the national economy that the claimant can perform (Tr. 28). The ALJ concluded, therefore, that the claimant was not disabled for the purposes of DIB and SSI eligibility (Tr. 28-29).

The plaintiff disagreed with the ALJ's decision and filed a request for further review (Tr. 14). The Appeals Council entered an order denying her request for additional review (Tr. 7-10). The plaintiff then sought review of the agency's decision in federal court. 42 U.S.C. § 405(g).

### III. Procedural History

On December 20, 2006, the plaintiff initiated this action with the filing of a complaint (Docket Entry No. 1). In the complaint, she alleges that "the Defendant applied improper legal standards," and that "the administrative decision of the Defendant is not supported by substantial evidence." *Id.* at pg. 2. The plaintiff asks that she be awarded the disability benefits that she was seeking or, in the alternative, that this matter be remanded to the agency for rehearing.

To facilitate review of the agency's decision, the undersigned instructed the plaintiff to file a Motion for Judgment on the Administrative Record (Docket Entry No. 14). The plaintiff has filed

5

such a Motion (Docket Entry No. 15) along with a supporting Brief (Docket Entry No. 16). In her Brief, the plaintiff contends that the ALJ failed to properly evaluate her mental impairments and should have given more weight to plaintiff's complaints of pain. *Id.* at pg. 11. The defendant has responded by arguing that the denial of benefits was fully supported by substantial evidence in the record. Docket Entry No. 19.

### IV. Standard of Review

Judicial review in this type of case is limited to determining whether the findings of fact made by the Commissioner are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). The Court may not try the case *de novo*, make credibility assessments, or weigh the evidence. Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993). Even if the evidence could support a contrary conclusion, the decision of the Commissioner will stand if supported by substantial evidence in the record. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

### V. Legal Analysis

To qualify for DIB and SSI, a claimant must first be disabled. Cohen v. Sec'y of D.H.H.S., 964 F.2d 524, 528 (6th Cir. 1992). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months. 42 U.S.C. §423(d)(1)(A). In evaluating a claim for disability

6

benefits, the defendant is required to follow a sequential five-step evaluation process. These steps include :

> (1) a determination must be made as to whether the claimant is actually engaging in substantial gainful activity. If so, her claim will be denied. If, however, the claimant is not engaged in substantial gainful activity,
>
> (2) the agency must then ascertain whether the claimant suffers from a severe impairment. If not, the claimant will be denied benefits. If a severe impairment does exist, though,
>
> (3) the agency will ascertain whether the severe impairment meets or exceeds a listed impairment (20 CFR § 404, SubPart P, Appendix 1). If the claimant's particular problems fall within the definition of a listed impairment, the claim for benefits will be allowed. If not,
>
> (4) a determination will be made as to whether the claimant has the residual functional capacity to perform past relevant work. In short, can the claimant return to her former type of employment? If she can perform previous gainful activities, her claim will be denied. If not,
>
> (5) the agency must then determine whether the claimant's residual functional capacity will allow her to perform a significant number of other jobs, taking into account the claimant's age, education and work experience. If not, the claimant will be deemed to be disabled and eligible for disability benefits.

20 CFR §§ 404.1520(a)(4) and 416.920(a)(4); Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007).

Through the first four steps of the evaluation process, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003). Once the claimant has established an inability to perform past relevant work, the burden shifts to the agency to show that the claimant is capable of performing a significant number

7

of other jobs within the claimant's residual functional capacity and consistent with her age, education and work experience. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).

The plaintiff apparently carried her burden to the ALJ's satisfaction. The parties seem to agree with the ALJ's findings that the plaintiff was not gainfully employed at all relevant times (step 1), the plaintiff suffered from severe impairments (step 2), these impairments did not meet or medically equal one of the listed impairments (step 3), and the plaintiff does not have the residual functional capacity to perform past relevant work (step 4). The parties disagree, however, over the ALJ's finding that, considering all relevant factors, the plaintiff was capable of performing other gainful activities and was not disabled for the purposes of DIB and SSI eligibility (step 5).

**A.) Ability to Work**

Residual functional capacity is defined as what a claimant can do on a sustained, regular and continuing basis. Cohen, *supra* at pg. 530. The ALJ found that the plaintiff had the residual functional capacity "to lift and carry up to 10 pounds occasionally; sit for at least 6 hours out of an 8 hour day; and stand and walk for at least 2 hours each out of an 8 hour day. The claimant must have the option to alternate between sitting and standing. The claimant is limited to performing simple, one to two step instructions, with no working with the public and that is not dependent on close interaction with co-workers or supervisors in the performance of job duties." Tr. 25-27.

There is substantial evidence in the record to support the residual functional capacity attributed to the plaintiff by the ALJ. The treatment of plaintiff's physical impairments was, for the most part, conservative in nature, requiring nothing more than physical therapy, medication, and pain management. Dr. Jerry Lee Surber conducted a physical disability evaluation (Tr. 181-192) and found that the plaintiff's physical impairments were not so severe as to preclude her from

8

performing jobs demanding light exertion (Tr. 186). The plaintiff's primary care provider, Dr. Kenneth Beaty, opined that the plaintiff was impaired to the extent that she was "capable of low stress jobs" (Tr. 532). *See* Rogers v. Commissioner, 486 F.3d 234, 242 (6th Cir. 2007)(the opinion of a treating physician is entitled to great weight ).

Likewise, the plaintiff's mental impairments were found to be moderate in nature and did not prevent her from obtaining some type of employment (Tr. 211, 213-215, 289, 302). At both the LifeCare Family Services and Plateau Mental Health Center, the plaintiff's mental impairments were treated with cognitive behavioral therapy and medication on an out-patient basis. Upon examination, the plaintiff was able to complete serial 7's backwards from 100 to 65. She was able to spell "world" backwards. The plaintiff's immediate, recent, and remote memories were intact. She was oriented to time, place, person, and circumstance, with her thoughts being logical and sequential (Tr. 196). All these observations point to a claimant who was impaired, but not so impaired as to be unable to work.

The ALJ also noted that the plaintiff's reported daily and social activities were not suggestive of a totally incapacitated individual. The record shows that the plaintiff was able to cook her own meals, care for her personal needs, complete household chores such as the laundry, go out to shop for groceries, manage her finances, and care for her pets (Tr. 101-109). The plaintiff testified that she had purchased a new horse, saddle, and bridle, and that she rode the horse for a short distance (Tr. 557-559).[3] She gave administrative assistance to the local rescue squad (Tr. 555-557), helped her son load wood (Tr. 165, 579), and attended a barbeque where she socialized for a short time (Tr.

---

[3] There is a notation in the plaintiff's mental health records stating "CT has been spending more time working with her horses and visiting her friends." Tr. 162.

9

558). The evidence, therefore, was more than sufficient to show that the plaintiff had a diminished capacity to work but was not disabled.

**B.) Availability of Alternative Employment Opportunities**

To justify a denial of benefits, though, the agency was required to do more than simply show that the plaintiff was not totally incapacitated. There must be a showing made that there are alternative employment opportunities available that would take into account the plaintiff's particular physical and mental limitations. 20 CFR § 404.1520(a)(4)(v).

At the administrative hearing, an independent vocational expert, Dr. J.D. Flynn, testified that all relevant factors considered, the plaintiff could find employment as a packer/packager, production worker, inspector, tester, sorter, sampler, or weigher (Tr. 594). There was sufficient evidence in the record, therefore, to support the ALJ's conclusion that the plaintiff could find work within the framework of her physical and mental limitations and that she was ineligible for disability benefits.

**C.) Plaintiff's Objections**

Plaintiff asserts that the agency incorrectly denied her DIB and SSI because "The Administrative Law Judge failed to properly evaluate Ms. Dailey's mental impairments and improperly rejected her complaints of pain." Docket Entry No. 16 at pg. 11.

LifeCare Family Services (Tr. 179) and Plateau Mental Health Center (Tr. 455) diagnosed the plaintiff as having a mood disorder with depressive features caused by her general medical condition. The plaintiff's mental impairments were not severe enough, however, to require hospitalization and were treated with medication and therapy on an out-patient basis. The plaintiff relies upon the opinion of a consultive psychologist, Eugene Smith, who determined that the plaintiff's ability to work was seriously compromised by a major depressive disorder (Tr. 197). The

10

ALJ explicitly gave no weight to Mr. Smith's diagnosis, finding that it was inconsistent with the results of his clinical exam (Tr. 24). An ALJ is free to reject the opinion of a consulting psychologist based upon his interpretation of the psychological findings and lay evidence. <u>Crisp v. Sec'y of H.H.S.</u>, 790 F.2d 450, 452 (6th Cir. 1986). Here, there was ample proof in the record to support the ALJ's conclusion that the plaintiff's physical impairments, combined with her mental impairments, were not so debilitating as to render the plaintiff disabled.

Prior to the administrative hearing, the ALJ was stopped in his car when he observed the plaintiff and her mother walking down the block and across the street. The plaintiff was walking casually with a cigarette in one hand and a cola in the other. The plaintiff did not appear to have trouble walking or negotiating the curb (Tr. 564-566). The ALJ thought that what he saw was not consistent with the plaintiff's claim that it was too painful for her to walk even a block (Tr. 565). He questioned the plaintiff about what he saw but apparently was not impressed with her explanation (Tr. 27).

The plaintiff argues that the ALJ improperly based his decision in part on what he saw outside the hearing. She further claims that the ALJ wrongly discounted her complaints of pain because he "misconstrued some of the evidence regarding Ms. Dailey's level of activity" (Tr. 14-15).

The plaintiff relies on a case that holds that an ALJ may not discredit allegations of pain on matters outside the record. *See* <u>Miller v. Heckler</u>, 756 F.2d 679, 681 (8th Cir. 1985). Her reliance on this case, however, is misplaced. The ALJ's decision was not predicated on matters outside the record. The ALJ questioned the plaintiff on the record about what he had seen and gave her an opportunity to explain the matter to his satisfaction. She was unable to do so and compromised her

11

credibility to some extent. An ALJ may properly consider the claimant's credibility when analyzing that individual's level of impairment from subjective symptoms, and great deference is owed to such determinations of credibility. *Eg*. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 392 (6th Cir. 2004). Moreover, there was more than adequate evidence in the record to support the ALJ's suspicion that the plaintiff was not in as much pain or discomfort as she wanted him to believe. The plaintiff's objections to the agency's final decision, therefore, have no merit.

## R E C O M M E N D A T I O N

For the reasons discussed above, the undersigned respectfully RECOMMENDS that the plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the SSA denying the plaintiff disability benefits should be **AFFIRMED**.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See* Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(*en banc*).

                                            Respectfully submitted,

                                            _____
                                            E. Clifton Knowles
                                            United States Magistrate Judge